IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JAY FRANKLIN,                              :

        Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.                          :

Case No. 3:12-cv-00074

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

### REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).

1

Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §416.920. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §416.920(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI in April, 2007, which the Commissioner denied initially and on reconsideration and Plaintiff took no further appeal. *See* PageID 133-36, 142-55, 218-28, 308-09. Plaintiff filed applications for SSD and SSI on June 16, 2009, alleging disability from February 1, 2001, due to hepatitis C, a heart condition, anxiety, depression, a back impairment, a mental impairment, a left rotator cuff impairment, and panic attacks. *See* PageID 229-35, 236-38; 313. The Commissioner denied Plaintiff's applications initially and on reconsideration. PageID 137-40, 156-74. Administrative Law Judge Thomas R. McNichols held a hearing, PageID 89-131, and subsequently determined that Plaintiff is not disabled. PageID 67-

81. The Appeals Council denied Plaintiff's request for review, PageID 54-57, and Judge McNichols' decision became the Commissioner's final decision. *See Kyle v. Commissioner of Social Security*, 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled[1], Judge McNichols found that he has severe of low back pain, left shoulder rotator cuff tear, anxiety, depression, and alcohol abuse, but that he does not have an impairment or combination of impairments that meets or equals the Listings. *Id.*, ¶ 2, PageID 70, ¶ 3. Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of light work. PageID 71-72 ¶ 5. Judge McNichols then used section 202.18 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. PageID 80, ¶ 9. Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 81.

Plaintiff was admitted to Grandview Hospital in June, 2006, for chest pain, alcohol withdrawal, and complaints of panic attacks. PageID 503-32. Plaintiff's health care providers identified his diagnoses as acute chest pain, alcohol dependence, cocaine abuse, and cannabis abuse; they referred Plaintiff to outpatient care at Crisis Care. *Id.*

Plaintiff sought mental health evaluation at Crisis Care in December, 2006, for complaints of needing help with stopping drinking and panic attacks. PageID 457-67. At that time it was noted that Plaintiff "[was] not sure what [was] going on with him, that two years ago he began having problems facing reality after he stopped using heroin following an eight year period of using, that when he stopped using heroin, he began drinking up to one case of beer daily, and that the month prior to this assessment, he had been drinking ten beers daily. *Id.* It was

---

[1] Judge McNichols only evaluated Plaintiff's claim under Title XVI for supplemental security income because Plaintiff's date last insured for SSD was March 31, 2004. *See* PageID 67-81, 248.

4

noted further that Plaintiff was experiencing panic attacks both when he was drinking and when he was not drinking. *Id.* It was reported that Plaintiff's mental status examination was normal and his diagnoses were identified as alcohol dependence, opioid dependence in full sustained remission, and an anxiety disorder NOS, he was assigned a GAF of 40, and he was referred to the Consumer Advocacy Model Program ("CAM") rehabilitation program for counseling. *Id.*

Plaintiff sought emergency room treatment twice in February, 2007, for chronic alcohol use and anxiety at which times it was noted that Plaintiff drank to deal with his anxiety, his speech was pressured, and that he had an anxious mood, disorganized thought process, and a disheveled appearance. PageID 473-82, 497-502.

Plaintiff attended three therapy sessions through CAM before being evaluated by psychiatrist Dr. Knight on April 2, 2007. PageID 538-40. Dr. Knight reported that Plaintiff was intoxicated and reported that he had anxiety and panic attacks and drank four to five beers per day. PageID 613-16. Dr. Knight also reported that Plaintiff had a depressed mood and blunted affect and that his diagnoses were bipolar disorder rule out panic disorder, alcohol dependence, and alcohol intoxication. *Id.* Dr. Knight assigned Plaintiff a GAF of 35-40. *Id.* Dr. Knight noted that due to Plaintiff being intoxicated, he was unable to give informed consent, he was not committed to therapy, wanting an instant fix, and that he was in denial about his alcohol dependence. *Id.* Plaintiff subsequently saw Dr. Knight in May, July, and August, 2007. PageID 607-12. Dr. Knight noted that Plaintiff complained of panic attacks and hearing voices when he was stressed. *Id.* At two of these appointments, Dr. Knight reported that there were signs that Plaintiff had recently consumed alcohol. PageID 607, 609.

Examining psychologist Dr. Flexman reported on July 24, 2007, that Plaintiff's response style during the assessment was suboptimal, his effort during the mental status examination was

5

poor, and that his reliability was poor and suggested moderate malingering. PageID 563-66. Dr. Flexman also reported that Plaintiff drove, took the bus, or walked to get places, prepared food, did dishes, did laundry, cleaned around the house, went to his child's activities in the park, went to movies, and visited and talked with friends and family in person and over the phone. *Id.* Dr. Flexman reported further that Plaintiff denied a current problem with alcohol, had been clean from heroin for three years, and that he went through the Project Cure program in 1998. *Id.* Dr. Flexman noted that Plaintiff smelled like alcohol, his facial expressions were anxious, his general body movements were restless, his speech was normal, his affect was intense, he did not display any lability, his attitude was anxious, and that he was oriented. *Id.* Dr. Flexman also noted that Plaintiff's attention span, memory, and judgment were fair, and that obsessive thinking concerning somatic or other psychological problems was out of proportion with reality and no somatization was present. *Id.* Dr. Flexman identified Plaintiff's diagnoses as alcohol abuse, continuous; panic disorder; without agoraphobia, and borderline intellectual functioning and he assigned Plaintiff a GAF score of 55. *Id.* Dr. Flexman opined that Plaintiff had a slight impairment in his abilities to understand, remember, and carry out short, simple instructions, sustain attention, and interact with supervisors, a moderate impairment in his abilities to maintain concentration, make judgments for simple work-related decisions, interact with the public and coworkers, and respond appropriately to work pressures and changes in a work setting. *Id.*

Plaintiff returned to Crisis Care on August 12, 2008, due to his alcohol use and panic attacks. PageID 627-29. At that time it was noted that Plaintiff complained of anxiety causing him to be nervous, shaky, oversleep, and isolate himself. *Id.* Plaintiff's diagnoses were identified as alcohol dependence, depressive disorder NOS, and anxiety disorder NOS, and he was assigned a GAF of 40. *Id.* On August 21, 2008, psychiatrist, Dr. Bienenfeld, conducted a mental

6

status examination and found that Plaintiff had mostly mild or moderate mental symptoms. PageID 630-36.

On September 17, 2009, examining psychologist, Dr. Jones, reported that Plaintiff's presenting demeanor was defeated, resigned, and dysphoric, his affect was blunted, and that Plaintiff described his emotional state as depressed to emotionally labile. PageID 648-54.  Dr. Jones also reported that Plaintiff's facial expressions were dull and unanimated, his general body movements were slow, his posture was slumped, he was cooperative, and that Plaintiff "smelled of alcohol and [w]as unwashed." *Id.*  Dr. Jones noted that Plaintiff reported that he continued to consume alcohol because when he got nervous, he medicated himself with alcohol. *Id.* Dr. Jones noted further that Plaintiff's conversation was only semi-coherent, he exhibited some slurring, his stream of thought was disjointed, he was restless, his affect was blunted, he presented as preoccupied with his own symptomatology and evidenced some ongoing confusion, he presented as vague with regard to his degree of consciousness, and that he was oriented. *Id.* Dr. Jones identified Plaintiff's diagnoses as general anxiety disorder with panic symptoms, dysthymic disorder, and alcohol abuse; she assigned him a GAF of 50. *Id.*  Dr. Jones opined that Plaintiff was markedly impaired in his ability to relate to co-workers and supervisors and to withstand the stress and pressures associated with day-to-day work activity, was moderately to markedly impaired in his ability to understand, remember, and follow instructions, that it was unlikely that he would be able to complete simple, routine activities of daily living tasks in the community without assistance, and that he would be moderately impaired in his ability to maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks. *Id.*

Plaintiff sought assistance at Crisis Care on October 8, 2009, and was referred to the CAM rehabilitation program. PageID 685-86.

7

In late October and early November, 2009, Plaintiff underwent a mental health intake evaluation at CAM which a psychologist trainee performed. PageID 702-09. The evaluator noted that the intake session took place over two separate days because Plaintiff left the initial appointment due to his feelings of being overwhelmed and his experiencing a panic attack. *Id.* The evaluator also noted that Plaintiff complained of symptoms of depression and anxiety, uncued panic attacks, and auditory hallucinations, that he used alcohol to cope with his anxiety symptoms and panic attacks, had previously used heroin to "quiet the voices", had stopped using heroin five years prior to the evaluation, developed panic attacks following the loss of his stepfather, and that he reported he had to leave his job and his marriage dissolved due to his anxiety and maladaptive drinking to self-medicate. *Id.* The evaluator noted further that Plaintiff was currently drinking approximately once a week, his hygiene was mildly inadequate, his clothing was dirty and appeared neglected, he demonstrated signs of psychomotor retardation, his posture appeared rigid and tense, and that his rate of speech shifted with mood changes. *Id.* The evaluator reported Plaintiff showed signs of anxiety, but that he was cooperative with a normal affect and appropriate eye contact and was able to give detailed answers to most questions. *Id.* The evaluator identified Plaintiff's diagnoses as panic disorder without agoraphobia; alcohol dependence, in early partial remission; opioid dependence, in sustained full remission; nicotine dependence, with physiological dependence; rule out schizophrenia, paranoid type; rule out major depressive disorder, recurrent, with severe mood congruent psychotic features; and rule out generalized anxiety disorder. He assigned Plaintiff a GAF of 51. *Id.* Plaintiff was advised to begin individual counseling and psychiatric appointments. *Id.* This report was reviewed and co-signed by a social worker and a psychologist in February 2010. *Id.*

Plaintiff sought treatment from psychiatrist Dr. Ackner at Crisis Care on November 9, 2009, at which time he complained of anxiety and hearing voices. PageID 693-97. Dr. Ackner noted that Plaintiff reported having several panic attacks per week, hearing his name being called, complained of insomnia due to worrying and depression causing him to lie in bed for days, and that he reported drinking prior to his evaluation because "if I wouldn't have drank, I couldn't have come here today." *Id.* Dr. Ackner reported that Plaintiff's his speech was slowed and slurred, his appearance was unkempt and disheveled, he had a depressed and anxious mood, constricted affect, and that he was cooperative. *Id.* Dr. Ackner also reported that it was difficult to evaluate Plaintiff's affect when he was intoxicated. *Id.* Dr. Ackner identified Plaintiff's diagnoses as psychotic disorder, learning disorder NOS, alcohol dependence, and opioid dependence in sustained full remission; he assigned Plaintiff a GAF of 50. *Id.*

Dr. Foley, a psychiatrist at CAM, evaluated Plaintiff on January 28, 2010, at which time he reported that Plaintiff complained that he had a "hard time dealing with things," including having extreme anxiety when leaving his home and panic attacks. PageID 723-27. Dr. Foley also reported that Plaintiff smelled of alcohol, stated that he could not attend the evaluation unless he drank first, demonstrated severe anxiety, appeared guarded and suspicious, was unkempt, had a mistrustful demeanor, slurred speech, persecutory delusions, and that his thought content was guarded. *Id.* Dr. Foley noted that Plaintiff reported experiencing auditory hallucinations and that he was "clearly paranoid and psychotic today, fidgety, anxious." *Id.* Dr. Foley identified Plaintiff's diagnoses as chronic paranoid schizophrenia, panic disorder with agoraphobia, alcohol dependence, and nicotine dependence and he assigned Plaintiff a GAF of 40. *Id.* Dr. Gentile, a psychiatrist at CAM agreed with Dr. Foley's diagnostic assessment and treatment plan. PageID 727.

The record contains Plaintiff's counseling notes from CAM dated December, 2009, through June, 2011, during which time Plaintiff received mental health therapy. PageID 711-807, 827-55. Over time, it was noted that Plaintiff was withdrawn, stated that he experienced panic attacks about coming to appointments, was unkempt with neglected hygiene, hadn't slept because he was worried about coming to the appointments, that when the bus comes, he panics, and doesn't get on, he reported that he drinks only before coming to CAM, reported he hears his deceased father, but would not to talk about the incidents or how often they occur, and that he reported that he stayed in a dark room for an entire week. *Id.* On June 30, 2011, Plaintiff explained that he had had "rough times" in the past 6 weeks, but was now doing better. *Id.*

The record contains a copy of treatment psychiatrist Dr. Gentile's clinical notes dated January, 2010, to at least June, 2011. PageID 711-22, 727-31, 832-33, 854-55.  Those notes reveal that over time, Plaintiff reported that  medication  helped with his hallucinations but not with his paranoia, that he had continuing panic attacks and isolating behavior, his thought process was circumstantial and circumferential with an anxious mood, he was anxious, he endorsed medical compliance, and that he continued to experience severe anxiety and paranoia, although medications were helping. *Id.* Dr. Gentile also noted over time that Plaintiff exhibited decreased eye contact, was open and receptive to services, was compliant with his medication, his mood instability was less frequent and less severe and though he still had anxiety, it did not prevent him from doing things such as attending Thanksgiving with family. *Id.*  Eventually, Dr. Gentile found that Plaintiff had an easy rapport, demonstrated coherent, linear, and logical thinking, presented with a euthymic mood, he felt some improvement with  Prozac. *Id.*

On July 20, 2011, Dr. Gentile opined that Plaintiff had a marked degree of limitation in

activities of daily living and in concentration, persistence, or pace, and an extreme degree of limitation in social functioning. PageID 809-16.

Also on July 20, 2011, Plaintiff's counselor and Dr. Gentile completed interrogatories wherein they opined that if Plaintiff no longer abused drugs and/or alcohol, he would still have a severe underlying psychiatric condition that would markedly impair his ability to complete a normal work schedule of 40 hours per week, and that Plaintiff was not able to perform most work-related mental activities. PageID 819-26.  Plaintiff's counselor and Dr. Gentile concluded that Plaintiff had marked restrictions of activities of daily living, extreme difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence or pace. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by rejecting the opinion of his treating psychiatrist, Dr. Gentile, and by failing to properly evaluate the psychological evidence of record.  (Doc. 9).

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009).  "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, quoting *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), quoting 20 C.F.R. § 416.927(d)(2).

11

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, quoting *Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[2] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra,* quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, citing, *Wilson,* 378 F.3d at 544, citing 20 C.F.R. § 416.927(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, citing 20 C.F.R. §416.927(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07, citing Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

---

[2] FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

12

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, citing *Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra,* quoting *Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Judge McNichols rejected Dr. Gentile's assessment finding his opinion was not supported by objective findings. PageID 78. In addition, Judge McNichols found Dr. Gentile's treatment notes generally show improvement in Plaintiff's condition despite noncompliance with medications and several no-shows. PageID 78-79.

Dr. Gentile has been treating Plaintiff since January, 2010, and he has reported that Plaintiff is disabled by his mental impairments. In support of his opinion, Dr. Gentile has noted that Plaintiff has exhibited panic attacks, isolating behavior, circumstantial and circumferential thought process, and paranoia. In addition, Dr. Gentile reported that Plaintiff had an anxious or dysphoric mood and/or severe anxiety. Dr. Gentile's opinion is supported by Plaintiff's therapists' reports and clinical notes. For example, on January 21, 2010, Plaintiff's therapist noted that Plaintiff was withdrawn and suffered panic attacks about coming to the appointment.

13

On February 3, 2010, it was noted that Plaintiff was unkempt with neglected hygiene, PageID 786, and on February 25, 2010, Plaintiff's clothes were dirty/worn and he reported that he hadn't slept due to being worried about coming. PageID 780.

In addition, Dr. Gentile's opinion is supported by the opinion of examining psychologist Dr. Jones, who opined that Plaintiff was markedly impaired in his ability to relate to co-workers and supervisors and withstand the stress and pressures associated with day-to-day work activity. Dr. Jones also opined that Plaintiff was moderately to markedly impaired in his ability to understand, remember, and follow instructions, noting that Plaintiff would unlikely be able to complete simple, routine activities of daily living tasks in the community without assistance. Mental status examination findings from Dr. Foley, another psychiatrist at CAM further support Dr. Gentile's opinion.

Judge McNichols noted that Plaintiff missed multiple mental health treatment appointments and equated the gaps in treatment either to improvement in Plaintiff's symptoms or to the non-restricting impact Plaintiff's impairments have on his work life. However, "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evinces a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Commissioner*, 572 F.3d 272, 283, (6th Cir. 2009)(citation omitted); see *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)("it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation"). This is particularly so in the present case where the record often indicates that Plaintiff had poor insight and judgment. *See*, e.g., PageID 463, 473, 482, 627-29, 648-54.

The only evidence which arguably conflicts with Dr. Gentile's opinion are the reports and opinions of the reviewing psychologists. However, the Court notes that Dr. Haskins gave her opinion in October, 2009, which pre-date Plaintiff's January, 2010, commencement of treatment with Dr. Gentile. Therefore, once Plaintiff began receiving psychiatric care, Dr. Gentile's opinion stands virtually unchallenged. Under the facts of this case, the Commissioner erred by rejecting the opinions of Plaintiff's treating psychiatrist and by relying, instead, on the opinions of the reviewing physician. Therefore, the Commissioner's decision is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the essential factual issues have been resolved and record adequately establishes Plaintiff's entitlement to benefits. Specifically, as noted above, Plaintiff's treating psychiatrist, Dr. Gentile, has opined that Plaintiff is disabled by his mental impairment. Dr. Gentile's opinion is supported by his clinical notes, Plaintiff's treating therapists' clinical notes, and by examining psychologist Dr. Flexman's findings and opinion. The only evidence

that even arguably opposes Dr. Gentile's opinion are the non-treating, non-examining, reviewing mental health experts' opinions.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits pursuant to the Act.


November 29, 2012                                       s/ *Michael R. Merz*
                                                    United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).